UNITED STATES of America, Plaintiff,

v.

Patricia Campbell HEARST, Defendant.

Cr. No. 74–364–OJC.

United States District Court,
N. D. California.

March 22, 1976.

James L. Browning, Jr., U. S. Atty., F. Steele Langford, David P. Bancroft, Edward P. Davis, Jr., Asst. U. S. Attys., San Francisco, Cal., for the United States.

F. Lee Bailey, J. Albert Johnson, Boston, Mass., Thomas J. May, Brookline, Mass., for the defense.

## ON MOTION TO ADMIT MEMORANDUM RE INADMISSIBILITY OF PSYCHOLINGUISTIC TESTIMONY

OLIVER J. CARTER, Chief Judge.

Counsel for the defense urged this Court on at least three occasions to admit the testimony of Dr. Margaret Thaler Singer in the field of psycholinguistics. As reflected in the offer of proof, Dr. Singer, if called as an expert witness, would have testified that her expertise in this area enables her to conclude from a stylistic comparison of known writings and utterances of the defendant with certain writings and tape-recordings of the defendant's voice offered into evidence by the Government that these latter writings or utterances could not have been authored by the defendant.

Despite this offer of proof and counsel's persistent efforts to impress the Court with both the scientific reliability of the proposed testimony and its materiality in the instant case, the Court ruled against its admissibility. The purpose of this memorandum is to explain more fully the reasons for this ruling.

As the Court has emphasized on a number of occasions, there is no question that Dr. Singer is an eminently qualified clinical psychologist. It would be fair to conclude also that in the field of psycholinguistics Dr. Singer has become a recognized expert; she has been the recipient of much praise and admiration for her pioneering work in this developing art. It is the state of the art itself, however, and not the qualifications of Dr. Singer ·that dictated the ruling with respect to this testimony.

In considering whether to admit or exclude expert testimony, the trial court is vested with broad discretion. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317 (1962); *Mull v. United States*, 402 F.2d 571, 575 (9th Cir. 1969); *Lelles v. United States*, 241 F.2d 21, 26 (9th Cir. 1957). In the same vein, the trial Court must exercise its discretion in evaluating an expert's qualifications and the relevance and materiality of his or her testimony. *E. g., United States v. Dellinger*, 472 F.2d 340, 382 (7th Cir. 1972). With respect to the exercise of this discretion the Court of Appeals for this Circuit has said:

The countervailing considerations most often noted to exclude what is relevant and material evidence are the risk that admission will 1) require undue consumption of time, 2) create a substantial danger of undue prejudice or of confusing the issues or of misleading the jury, 3) or ·unfairly and harmfully surprise a party

who has not had a reasonable opportunity to anticipate the evidence submitted. Scientific or expert testimony particularly courts the second danger because of its aura of special reliability and trustworthiness.

*United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973).

The Court finds the language in this passage most applicable here, particularly in view of the paucity of authority cited by defense counsel for the admissibility of psycholinguistic testimony. In their rather lengthy brief filed in this matter, counsel cited only two cases in which the admissibility of such evidence has ever been discussed. The first case relied upon is a New York State decision in which an expert in the field of psycholinguistics was allowed to testify on behalf of the defense as to the authorship of the defendant's signed confession. *New York v. Mulvey*, Indictment No. 24,728 (Erie County, N. Y., Jan. 1955). Despite the apparent similarity between the situation in *Mulvey* and that in the instant case, the trial court's decision there is of little precedential value since the case was unreported and no transcript was made available to this Court which could set forth the trial judge's actual findings and the foundational evidence upon which his ruling was based. The case was reversed on appeal, but without mention made of the ruling on the admissibility of psycholinguistic testimony. 1 A.D.2d 541, 151 N.Y.S.2d 587 (1956).

The second case cited has even less significance with respect to the position taken by the defendant here, since the only reference to the psycholinguistics admissibility question was by way of dictum in a concurring opinion. The court was not confronted with the question presented here, and the majority did not decide it. *State v. Thompson*, 54 Wash.2d 100, 338 P.2d 319 (1959).

█ It is not inconceivable that in the near future the science of psycholinguistics will have achieved such general acceptance among psychological and scientific authorities as to justify courts of law in admitting expert testimony on this subject. *See Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (1923). Because this Court was concerned, however, that the relative infancy of this area of scientific endeavor might well have created an unjustifiable "aura of special reliability and trustworthiness" around the testimony of Dr. Singer, it decided that such testimony should not be admitted into evidence.

█ There was one other important reason for the Court's decision on this matter. Even if it were to be conceded that Dr. Singer's field of expertise is sufficiently reliable to justify expert testimony and such testimony could show with a reasonable degree of certitude that by a psycholinguistic analysis the defendant could not have authored the writings offered against her, there remains a serious question as to the materiality of this expert opinion. The issue with respect to these writings or tape recordings is the defendant's *state of mind* at the time she wrote or uttered the words used. Whether or not the defendant herself authored or composed the sentences chosen to express the ideas conveyed in the writings is immaterial to the issue of whether she subscribed to these ideas—that is, *whether she meant what she said*. It is certainly not uncommon for one who wishes to express an idea to enlist the assistance of another, whose talents as a writer are superior to one's own, for the purpose of insuring felicity of expression. The fact that someone other than the speaker has written the words spoken does not mean that the speaker does not share the ideas expressed.

For these reasons the Court found the testimony of Dr. Singer inadmissible under the circumstances of this case. As a final note it may be observed that even if the jury would not have given undue weight to the testimony of Dr. Singer, in the Court's judgment, the significance of that testimony did not warrant the inordinate consumption of time that would have been necessitated not only by Dr. Singer's testimony, but also by any rebuttal testimony to which the Government would have been entitled.