COMMONWEALTH of Kentucky,
Appellant,

v.

Arionne D. CHRISTIE, Appellee.

Arionne D. Christie, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 2000–SC–0694–DG,
2000–SC–0702–DG.

Supreme Court of Kentucky.

Dec. 19, 2002.

Rehearing Denied March 20, 2003.

A.B. Chandler III, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Commonwealth of Kentucky.

Daniel T. Goyette, Chief Jefferson District Public Defender, J. David Niehaus, Office of the Public Defender for Jefferson District Public Defender, Louisville, for Arionne D. Christie.

Opinion of the Court by Justice JOHNSTONE.

Arionne Christie was convicted by a Jefferson Circuit Court jury of first-degree robbery and first-degree burglary and was sentenced to two concurrent terms of ten years' imprisonment. On appeal to the Court of Appeals, Christie argued that the trial court erred in excluding expert testimony on the reliability of eyewitness identification, which the trial court had excluded on two alternative grounds: (1) the testimony was *per se* inadmissible; and (2) the testimony was not admissible under KRE 702 because such testimony was within the common knowledge of jurors. The Court of Appeals affirmed Christie's conviction on the grounds that the trial court did not abuse its discretion in excluding the testimony under KRE 702. But the Court of Appeals held that the trial court erred in ruling that the testimony was inadmissible *per se.*

On discretionary review, Christie argues that, while the Court of Appeals correctly held that expert testimony on the reliability of eyewitness identification is not inadmissible *per se,* it erred in holding that the trial court abused its discretion in excluding the testimony under KRE 702. The Commonwealth argues that such testimony never "assists a trier of fact to concretely assess the reliability of real-world eyewitness identifications." Therefore, the Commonwealth argues that the evidence is *per se* inadmissible under KRE 702. For the reasons set forth below, we agree with Christie and, therefore, reverse and remand with instructions.

## I. Facts and Procedural History

On the morning of February 11, 1997, Jill Faith entered her apartment building on the way to her residence. A black man wearing a bandana over the lower part of his face approached Faith, brandished a knife in her face, and demanded her money. She threw her wallet in the air and fled to the safety of her apartment. The entire exchange took less than ten seconds. The next day, an off-duty police officer working as an apartment security guard, Ronald Russ, spotted Christie, who was wearing a wig, on apartment premises. Christie was known to Russ from a prior occasion in which Russ had discovered Christie loitering on apartment premises and had warned him not to trespass again. Aware of the crimes against Faith, Russ promptly arrested Christie for criminal trespass. A search of the car owned by Christie's companion, Mike Cash, uncovered a knife resembling the one used to commit the crimes. Cash said that, though he was not certain, the knife probably belonged to Christie. That evening, Faith identified Christie as the perpetrator from a picture in a police photo pack. Faith's boyfriend, Jason Bennett, who had seen a suspicious person loitering in the apartment complex shortly before the crimes, independently identified Christie from the photo pack. Faith and Bennett—who are both white—also gave matching physical descriptions of Christie's apparel and appearance on the day of the crimes.

Over a year prior to trial, Christie moved to retain at the county's expense an "expert in the field of eyewitness identification" to assist Christie's defense of misidentification. The trial court granted the motion, and the defense retained an expert in eyewitness identification, Dr. Baker.

The day before trial, the Commonwealth filed a written motion to exclude Dr. Baker's testimony. At the conclusion of the Commonwealth's case, the trial court heard arguments on the motion. In granting the motion, the trial court concluded that expert eyewitness-identification testimony was *per se* excluded under *Pankey v. Commonwealth,* Ky., 485 S.W.2d 513 (1972), and *Gibbs v. Commonwealth,* Ky. App., 723 S.W.2d 871 (1986). Alternatively, the trial court cited *United States v. Curry,* 977 F.2d 1042 (7th Cir.1992), *cert. denied sub nom., Holland v. United States,* 507 U.S. 947, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993), as authority for excluding the testimony based on its findings in this case that the problems with misidentification were within the common knowledge of the jury.

In *Curry,* the district court excluded similar expert eyewitness-identification testimony on grounds that the jury was "generally aware of the problems with identification." *Id.* at 1051. The Seventh Circuit concluded that the "district court's focus on what the jury is 'generally aware' of could be a finding that [the expert's] testimony would not assist the trier of fact under Rule 702, or it could be considered a finding that her testimony would be undu-

ly confusing or a waste of time under Rule 403." *Id.* Because of the trial court's reliance on *Curry*, the similarity of its "common-knowledge" finding with the district court's "generally aware" finding, and the similarity between the applicable federal Rules of Evidence and the Kentucky Rules of Evidence, the trial court's alternative ruling also can be construed as excluding the testimony under either KRE 403 or KRE 702.

Christie appealed his convictions to the Court of Appeals which held, contrary to the trial court, that KRE 702—and not prior case law—controls the issue, and that the rule does not mandate a *per se* exclusion of expert testimony on eyewitness identification. The Court of Appeals, however, affirmed Christie's convictions on the grounds that the trial court did not abuse its discretion in excluding Dr. Baker's testimony under KRE 702. In this consolidated appeal, both Christie and the Commonwealth seek relief from the Court of Appeals' decision. We reverse and remand.

## II. Discussion

▇ Courts have taken three different approaches to the issue of expert-witness testimony regarding the reliability of eyewitness identification: (1) the admission of the testimony is left to the sound discretion of the trial court, (2) the testimony is inadmissible *per se*, and (3) it is an abuse of discretion to exclude the testimony where there is no substantial evidence corroborating the eyewitness identification ("limited admissibility"). *McMullen v. State*, 714 So.2d 368, 370 (Fla.1998) (citing cases). The vast majority of courts that have addressed the issue have adopted the first approach. *Id.* More importantly, the discretion vested in the trial court in the first approach is consistent with Kentucky's approach to the admissibility of

expert testimony under KRE 702. *See, e.g., Goodyear Tire and Rubber Co. v. Thompson*, Ky., 11 S.W.3d 575, 578 (2000). Therefore, we hold that trial courts in the Commonwealth have the discretion under KRE 702 to admit expert-witness testimony regarding the reliability of eyewitness identification, and we overrule *Pankey, supra*, and *Gibbs, supra*, to the extent that those cases hold otherwise. We now turn to the question of whether the trial court abused its discretion in excluding Dr. Baker's testimony.

### KRE 702 Analysis

▇ When faced with a proffer of expert testimony under KRE 702, the trial judge's task is to determine "whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Goodyear Tire*, 11 S.W.3d at 578 (internal quotation marks omitted), quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469, 482 (1993). This calls upon the trial court to assess whether the proffered testimony is both relevant and reliable. *Id.* This assessment does not require a trial court to hold a hearing on the admissibility of the expert's testimony. *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir.2000), *cert. denied*, 531 U.S. 1044, 121 S.Ct. 644, 148 L.Ed.2d 549 (2000). But a trial court should only rule on the admissibility of expert testimony without first holding a hearing "when the record [before it] is complete enough to measure the proffered testimony against the proper standards of reliability and relevance." *Jahn v. Equine Services, P.S.C.*, 233 F.3d 382, 393 (6th Cir.2000).

▇ Usually, the record upon which a trial court can make an admissibility decision without a hearing will consist of the

proposed expert's reports, affidavits, deposition testimony, existing precedent, and the like. *See, e.g., In re Hanford Nuclear Reservation Litigation,* 292 F.3d 1124, 1139 (9th Cir.2002); *Oddi v. Ford Motor Co.,* 234 F.3d 136, 151 (3rd Cir.2000), *cert. denied,* 532 U.S. 921, 121 S.Ct. 1357, 149 L.Ed.2d 287 (2001). Such a record is necessary in order to give a trial court an adequate basis for making its decision on the relevancy and reliability of the proposed expert's testimony and to allow for appellate review of the trial court's decision. *Clay,* 215 F.3d at 667. Failure to make a determination on the admissibility of expert testimony without an adequate record is an abuse of discretion by the trial court. *See United States v. Smithers,* 212 F.3d 306, 314 (6th Cir.2000); *see also United States v. Hearst,* 412 F.Supp. 893, 894 (N.D.Cal.1976) (A "trial court must exercise its discretion in evaluating an expert's qualifications and the relevance and materiality of his or her testimony.").

■ In this case, the trial court did not hold a hearing to determine the admissibility of Dr. Baker's testimony. Rather, after noting that the jury had been voir dired extensively on the question of misidentification and the potential for inaccurate recollection of faces, the trial court turned to *Curry, supra,* to support its conclusion that the problems with recall and the potential for misidentification by witnesses were within the common knowledge of the jury. We conclude that *Curry* did not provide the trial court with a sufficient record to evaluate the admissibility of Dr. Baker's testimony under KRE 702.

In *Curry,* the defense's expert witness was prepared to testify to a number of different factors that affect the reliability of eyewitness identification. *Id.* at 1042. In excluding the testimony, the district court in *Curry* stated:

In the present controversy the jury was questioned during voir dire about recall and the ability to identify persons they had seen only briefly, or had not seen for a period of time. Additionally, all of the witnesses who identified defendants were thoroughly cross examined about the reliability of their identification, the length of time they saw the defendant, the conditions under which they saw the defendant, the length of time which elapsed between the witness seeing the defendant and the photos or the defendant in person, the number of times the witness saw the photo arrays, and when the witness was shown the photo array. Thus, the jury was made aware of many of the factors which may [affect] perception, retention and recall. * * * Thus, although the jury may not understand the intricacies of perception, recall and retention, the jury is generally aware of the problems with identification.

*Id.* at 1051.

The trial court in the instant case quoted from and relied on the above rationale to reach its conclusion that the subject matter of Dr. Baker's testimony was within the common knowledge of the jury, and, thus, would not assist the jury to determine a fact in issue, *i.e.,* the testimony would not be relevant under KRE 702. *See, e.g., Persinger v. Norfolk & Western Railway Co.,* 920 F.2d 1185, 1187 (4th Cir.1990) (citing cases to support its holding that "[a]lthough expert testimony is generally presumed helpful to the jury," matters within the common knowledge of jurors are properly excluded under FRE 702). But most of the support that the district court's rationale gives to the trial court's KRE 702 relevancy decision in this case, is eroded by the *Curry* Court's rationale for affirming the district court, which is based more on FRE 403 relevancy grounds than it is on FRE 702 relevancy grounds.

The *Curry* Court began its analysis on the issue by noting that the "district court's focus on what the jury is 'generally aware' of could be a finding that [expert eyewitness-identification] testimony would not assist the trier of fact under Rule 702, or it could be considered a finding that her testimony would be unduly confusing or a waste of time under Rule 403." *Id.* While conceding that the proposed expert's testimony "may not have been totally unhelpful," the *Curry* Court held that the district court did not abuse its discretion in excluding the expert's testimony because the eyewitness testimony against the appellant was "minor" in relation to the other evidence of the appellant's guilt. *Id.* In other words, the testimony was properly excluded because of its tendency to mislead or confuse the jury. *See id.* ("Rule 702 analysis incorporates to some extent a consideration of the dangers, particularly the danger of unfair prejudice, enumerated in FRE 403," and the "'helpfulness factor' under Rule 702 involves consideration whether the expert testimony would be misleading or confusing in the context of the trial.") Thus, *Curry* is tepid precedent at best as support for the trial court's ruling under KRE 702 in this case. It gave the trial court no basis to evaluate the reliability and little basis to evaluate the relevancy of Dr. Baker's proposed testimony, under KRE 702. Moreover, Dr. Baker's avowal testimony directly contradicted the trial court's relevancy determination.

On avowal, after testifying to her credentials, Dr. Baker testified to eight different factors that adversely affect a person's ability to perceive and remember events: (1) significant or extreme levels of stress impair memory rather than enhance it; (2) eyewitness identifications are less accurate when a weapon is present; (3) there is little or no correlation between the confidence the witness has in his or her identification and the accuracy of that identification; (4) a person's memory diminishes over a period of hours rather than days or weeks (the "forgetting curve"); (5) an eyewitness's initial identification may influence that eyewitness's later identifications and perceived memories of an event (the "relation back" phenomenon); (6) there is a lack of correlation between the length of time the witness viewed the assailant and the accuracy of the witness's memory; (7) the photo pack was unduly suggestive in the way it was presented to the witness for identification; and (8) testimony on cross-racial identifications is more unreliable than is testimony on same-race identifications. She testified that the eight factors had been rigorously tested, the tests were capable of repetition, had been subjected to peer review, and were generally accepted in the field of psychology. Finally, contrary to the trial court's observations, she repeatedly testified that these eight factors were not within the common knowledge of lay persons or jurors.

Dr. Baker's avowal testimony was sufficient to have allowed the trial court to admit some or all of her testimony under KRE 702. *See generally Goodyear*, 11 S.W.3d at 575–76 (discussing the relevant factors that go into an admissibility determination under *Daubert*). While expert eyewitness-identification testimony has not been admitted with a broad brush, the "narrow circumstances" held sufficient to support the introduction of such testimony under FRE 702 include "such problems as cross-racial identification, identification after a long delay, identification after observation under stress, and psychological phenomena as the feedback factor and unconscious transference." *United States v. Harris*, 995 F.2d 532, 535 (4th Cir.1993) (citing cases). Dr. Baker's avowal testimony embraced all of these considerations or problems. Therefore, we hold that the

trial court abused its discretion under KRE 702 by not considering Dr. Baker's testimony before excluding it. We now turn to the question of whether the trial court's reliance on *Curry* to exclude the testimony was an abuse of discretion under KRE 403.

### KRE 403 Analysis

Unlike in *Curry,* there was no direct evidence against Christie other than the eyewitness identifications. Further, the circumstantial evidence against Christie, standing alone, would not have been sufficient to sustain a conviction. Thus, the eyewitness identifications of Christie were central to Christie's conviction whereas the identification evidence in *Curry* was described as "minor." This distinction makes *Curry* inapposite to any ruling of the trial court in this case to exclude Dr. Baker's testimony under KRE 403 grounds, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

■ The weight and nature of the evidence against the defendant is something a trial court should consider before ruling on the admissibility of expert eyewitness-identification testimony under KRE 403. A great number of courts have held that such testimony should be admitted when there is no other inculpatory evidence presented against the defendant other than a small number of eyewitness identifications. *See, e.g., Smithers,* 212 F.3d at 317; *United States v. Moore,* 786 F.2d 1308, 1313 (5th Cir.1986); *United States v. Downing,* 753 F.2d 1224, 1226 (1985); *Johnson v. State,* 272 Ga. 254, 526 S.E.2d 549, 552 (2000); *State v. Whaley,* 305 S.C. 138, 406

S.E.2d 369 (1991). As one commentator put it:

> Where identification rests on testimony by someone who knew the defendant well and was in a good position to see the crime, or where the identification seems strongly established for other reasons (like physical evidence connecting defendant to the crime), there is little reason to admit [expert eyewitness-identification] testimony. Where identity is a crucial and closely contested issue, however, and where critical testimony is given by people who did not know the perpetrator and had only a short time to see him or were limited or distracted by other factors, expert testimony seems more clearly warranted.

Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence,* § 6.37, at 601 (1995).

Thus, the particular facts of this case—that (1) eyewitness identification by strangers of a different race was the main and most compelling evidence against Christie, (2) there was no other direct evidence against Christie, and (3) the circumstantial evidence against Christie was weak—make exclusion of Dr. Baker's testimony under KRE 403 an abuse of discretion. *See, e.g., United States v. Sebetich,* 776 F.2d 412, 419 (3rd Cir.1985) (interpreting FRE 403), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988). Further, the error was not harmless.

■ An error is considered harmless or non-prejudicial when, upon review of the whole case, there is not a "substantial possibility that the result would have been any different" had the error not occurred. *Commonwealth v. McIntosh,* Ky., 646 S.W.2d 43, 45 (1983). Faith's and Bennett's cross-racial eyewitness identifications of Christie were crucial to the Commonwealth's case. The other evidence against Christie was weak. Had Christie been able to attack the accuracy and relia-

bility of Faith's and Bennett's identifications of him, the jury very well may have reached a different verdict.

### III. Conclusion

The blanket exclusion of Dr. Baker's testimony was due to the trial court's incorrect belief that her testimony was inadmissible *per se*, and its erroneous relevancy determination under KRE 702 and KRE 403. This does not mean conversely, however, that the whole of her testimony would have been admitted but for trial court error. Rather, that question remains to be answered and depends a great deal upon the facts of this particular case. Because fact-finding is not an appropriate function of this Court, and because the trial court's *per se* inadmissibility ruling most likely caused it not to fully consider the admissibility of Dr. Baker's testimony, we decline to determine what factors, if any, Dr. Baker should have been allowed to testify to. It is more appropriate to remand this case to the Jefferson Circuit Court to determine the relevancy and reliability of expert eyewitness-identification testimony under KRE 702 based upon a proper record, which most likely will result from a hearing on the issue. Should the trial court determine that any or all of the testimony is admissible, it shall vacate the judgments against Christie and order a new trial.

For the reasons set forth above, we reverse the Court of Appeals and remand this case to Jefferson Circuit Court for proceedings consistent with this opinion

LAMBERT, C.J.; COOPER, GRAVES, KELLER, and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in result only.