**Roy E. DIXON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2003–SC–0876–MR.**

Supreme Court of Kentucky.

Nov. 18, 2004.

William F. Polk, Jr., Polk & Polk, Henderson, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellant, Roy E. Dixon, was convicted by a Henderson Circuit Court jury of trafficking in a controlled substance in the first degree and sentenced to ten years in prison. Upon finding Appellant to be a persistent felony offender in the second degree, the jury enhanced the sentence to

twenty years. Appellant appeals to this court as a matter of right, Ky. Const. § 110(2)(b), asserting two claims of reversible error, *viz:* (1) the trial court permitted a police officer to express an opinion as to the meaning of markings on a small piece of paper found in the glove compartment of his automobile; and (2) the trial court admitted into evidence Appellant's admission that he was unemployed after he had invoked his right to counsel. Finding no error, we affirm.

\*    \*    \*    \*    \*    \*

On October 17, 2001, Detective Jamie Duvall and Officer Todd Seibert of the Henderson Police Department were conversing while sitting in their separate police vehicles on a public street when they observed Appellant operating a motor vehicle. Because Duvall knew that Appellant's operator's license had been suspended, he and Seibert proceeded in separate directions with the intention of stopping and detaining Appellant for an apparent violation of KRS 186.620(2). Seibert sighted Appellant's vehicle and pulled his marked police cruiser in behind Appellant's vehicle in the parking lot of an apartment complex. As Appellant exited his vehicle, Seibert saw him throw a plastic sandwich baggie to the ground. Detective Duvall then arrived, handcuffed Appellant, and placed him in the rear of Seibert's cruiser. The two officers retrieved the plastic baggie and observed that it contained several off-white colored rocks later determined to be crack cocaine. Duvall searched Appellant's automobile and found a small piece of paper in the glove compartment containing the following markings:

V – 300
A – 125
B – 100
G – 200
G – 100
M – 50
D–S 25
900

Because Duvall believed that the paper reflected "transactions" and "money amounts" the officers took the piece of paper into custody. Cocaine is a Schedule II controlled substance. KRS 218A.070. Mere possession of cocaine is a Class D felony, KRS 218A.1415(2), but possession of cocaine for the purpose of sale is a Class C felony. KRS 218A.1412(1); KRS 218A.010(28) ("traffic" includes possession with intent to sell a controlled substance). The piece of paper was introduced at trial as evidence that Appellant possessed the cocaine for the purpose of sale.

Appellant invoked his right to counsel immediately upon his arrest. Subsequently, he was taken to the police station where Duvall asked him the routine questions necessary to complete the Uniform Citation form that is completed after every citation or arrest. The form contains blocks to be filled in with information pertaining to, *inter alia,* the arrestee's name, address, social security number, marital status, date of birth, sex, race, ethnicity, height, weight, color of hair and eyes, and place of employment. When asked for his place of employment, Appellant responded that he had been unemployed since 1999 and that he had just been released from jail. A search of Appellant's person revealed that he was in possession of $193.00 in cash. At trial, the Commonwealth introduced Appellant's statement that he was unemployed but the trial court suppressed his statements that he had been unemployed since 1999 and that he had just been released from jail. The Commonwealth relied on evidence that Appellant was unemployed but in possession $193.00 in cash as additional circumstantial evidence that he was a drug trafficker.

### I. PHYSICAL EVIDENCE.

■ Appellant first contends that the slip of paper described *supra* was not suf-

ficiently identified as belonging to him. Physical evidence is admissible if a reasonable juror could find that the matter is what its proponent claims it to be. KRE 901(a); Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 7.00[3], at 495 (4th ed. LexisNexis 2003) (citing 5 McLaughlin, *Weinstein's Federal Evidence* § 901.02[3] (2d ed.2002)). The Commonwealth connected the piece of paper to Appellant by showing that the paper was found in a vehicle owned and operated by Appellant and in which he was the sole occupant both at the time Duvall observed him driving it and at the time Seibert stopped it. Circumstantial evidence may be used to connect a writing to its alleged author. KRE 901(b)(4); Lawson, *supra,* § 7.05, at 501. *See United States v. McGlory,* 968 F.2d 309, 329–331 (3d. Cir. 1992) (writing held authenticated where no direct evidence of authorship was found and no expert comparison testimony was proffered, but prosecution established that writing was found in a trash container outside the defendant's residence, had been torn from a notebook belonging to defendant, and contained information from defendant's private telephone book).

■ We have held proof that a defendant was in possession and control of a vehicle sufficient to support a conviction for constructive possession of contraband found within a vehicle. *Burnett v. Commonwealth,* Ky., 31 S.W.3d 878, 881 (2000). That holding is in accord with the general rule:

> The contents of an automobile are presumed to be those of one who operates it and is in charge of it, and this applies particularly where the operator is also the owner, as here. Where immediate and exclusive possession of an automobile ... is shown, the inference is authorized that the owner of such property is the owner of what is contained therein

and this inference has been referred to as a rebuttable presumption.

*Chambers v. State,* 162 Ga.App. 722, 293 S.E.2d 20, 21 (1982) (internal quotations and citations omitted).

We reject Appellant's contention that the concept of constructive possession applies only to "contraband," which he defines as items clearly illegal on their face. While the issue often arises in that context, the concept of constructive possession is not so limited. For example, in *Yates v. Fletcher,* Ky.App., 120 S.W.3d 728 (2003), a prisoner was held to have been in constructive possession of a stolen four-pound can of tuna found in his laundry bag under his bed. *Id.* at 730. Evidence that Appellant owned the vehicle, was operating the vehicle, and was the sole occupant of the vehicle in which the piece of paper was found was sufficient circumstantial evidence to permit an inference that Appellant was the owner of the piece of paper.

■ Appellant next argues that even if the piece of paper were his, the Commonwealth did not sufficiently connect it to the trafficking charge, thus it was irrelevant and inadmissible. KRE 402. This assertion is intertwined with Appellant's claim that Detective Duvall should not have been permitted to render an opinion that the notations on the paper referred to "transactions" and "money amounts." If that was, indeed, what the notations signified, the paper was most assuredly relevant as one could reasonably conclude that it was connected to drug trafficking. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401.

Appellant properly characterizes Duvall's opinion as expert testimony, for he

had no personal knowledge as to the meaning of the notations and the average juror would not be expected to have acquired such knowledge. KRE 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence ..., a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). Appellant asserts that the trial court erred in not holding a *"Daubert* hearing" to determine the reliability of Duvall's opinion. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *See also Commonwealth v. Christie,* Ky., 98 S.W.3d 485, 488 (2002). ("[T]he trial court [must] assess whether the proffered testimony is both relevant and reliable.").

The trial court's "gatekeeping" function as described in *Daubert,* 509 U.S. at 595, 113 S.Ct. at 2798, applies as well to "specialized knowledge" as it does to scientific knowledge. *Kumho Tire Co.,* 526 U.S. at 149, 119 S.Ct. at 1175. However, a trial court has wide latitude in deciding *how* to test an expert's reliability and in deciding whether or when special briefing or other proceedings, *i.e.,* at a *Daubert* hearing, is needed to investigate reliability. 526 U.S. at 152, 119 S.Ct. at 1176. Thus, formal *Daubert* hearings are not always required. *Hyatt v. Commonwealth,* Ky., 72 S.W.3d 566, 575 (2002) (*citing Nelson v. Tenn. Gas Pipeline Co.,* 243 F.3d 244, 249 (6th Cir.2001)). We have cautioned, though, that a trial court should hold a hearing unless "the record [before it] is complete enough to measure the proffered testimony against the proper standards of reliability and relevance." *Christie,* 98 S.W.3d at 488. In *Christie,* we noted that the record upon which a trial court can

make an admissibility decision without a hearing usually will consist of "the proposed expert's reports, affidavits, deposition testimony, and existing precedent." *Id.* at 488–89. In *Allgeier v. Commonwealth,* Ky., 915 S.W.2d 745 (1996), we noted that a police officer's opinion based on training and experience as to whether, *e.g.,* there was or was not evidence of a forced entry, "can be distinguished from the more extensive and complex knowledge required for testimony by traditional experts, such as accident reconstructionists and forensic pathologists." *Id.* at 747.

The type of expert opinion offered by Detective Duvall has been almost routinely admitted in drug cases. *United States v. Ortega,* 150 F.3d 937, 943 (8th Cir.1998) (experienced drug enforcement agent opined that notations in notebook found at defendant's residence indicated amounts of drugs sold, purchase price and customer's name, though notations made no specific reference to drugs). *See also United States v. Tejada,* 886 F.2d 483, 486 (1st Cir.1989) (agent characterized notebook as "drug ledger": "It is clearly permissible for properly qualified law enforcement agents to testify about their interpretation of entries in relevant papers ...."); *United States v. Carmona,* 858 F.2d 66, 69 (2nd Cir.1988) ("Fed.R.Evid. 702 permits a properly qualified law enforcement agent to testify as an expert regarding the meaning of coded language related to narcotics."); *United States v. Merritt,* 736 F.2d 223, 228 (5th Cir.1984) (allowing expert police officer to render opinion as to meaning of words "Phoenix," "Dragon," and "Home Place" written on a sheet of paper found in defendant's possession). Similarly, in *Sargent v. Commonwealth,* Ky., 813 S.W.2d 801 (1991), we allowed officers to render opinions that possession of fifteen pounds of marijuana was for the purpose of sale and not personal use "based on experience derived from many drug relat-

ed investigations." *Id.* at 802. And in *Kroth v. Commonwealth*, Ky., 737 S.W.2d 680 (1987), we permitted an officer to express an opinion that drugs were possessed for purpose of sale, not personal use, "based on his ten years experience as a narcotics officer." *Id.* at 681. (Though *Sargent* and *Kroth* are both pre-*Daubert* decisions, they are representative of the type of expert opinion based on "specialized knowledge" for which a formal *Daubert* hearing on reliability may be unnecessary).

The trial court required the Commonwealth to "lay a proper foundation" before admitting Duvall's opinion. Duvall testified that he had thirteen years of experience with the Henderson Police Department and that he had specialized in narcotics investigations for nine of the previous ten years, that finding papers like this was "pretty common," and that he had seen "dozens" of pieces of paper similar to the one found in Appellant's glove compartment. He further testified that such "transaction lists" normally do not spell out the names of customers or the details of drug transactions, but instead list either initials or a street name next to a number denoting the amount owed. Based on this evidence and existing precedents, we conclude that the trial court did not abuse its discretion in permitting Duvall to render his opinion without first holding a formal *Daubert* hearing.

■ Lastly, Appellant argues that the probative value of the piece of paper was substantially outweighed by the danger of undue prejudice. We disagree. The phrase, "undue prejudice," generally refers to two distinct risks that might occur due to the introduction of evidence: "(1) risk of an emotional response that inflames passions, generates sympathy, or arouses hostility; and (2) risk that the evidence will be

used for an improper purpose." *Lawson, supra,* § 2.10[4][b], at 88. Clearly, neither risk is involved with the introduction of a piece of paper consisting of merely numbers and letters. Thus, the trial court did not abuse its discretion in concluding that the probative value of the piece of paper was not substantially outweighed by its prejudicial effect. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999).

## II. ROUTINE BOOKING QUESTION.

■ If at any time during a police interrogation the suspect has "clearly asserted" his right to counsel, the interrogation must cease until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); *see also Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). Appellant contends that his rights under *Edwards* and *Miranda* were violated when, after he had invoked his right to counsel, the Commonwealth elicited information from him that he was unemployed and then used that information against him at trial. The Commonwealth responds that *Miranda* only extends to "custodial interrogations," 384 U.S. at 444, 86 S.Ct. at 1612, and that routine "booking" questions are not deemed to be a custodial interrogation.

The United States Supreme Court addressed a similar issue in *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (plurality opinion). The police officers in *Muniz* arrested the defendant for driving while under the influence of intoxicants (DUI) but did not advise him of his *Miranda* rights. Nevertheless, they asked him a number of routine booking questions regarding his name, address, height, weight, eye color, date of birth, and age. A plurality of the Supreme Court rejected the Commonwealth's present argument and determined that the

questioning was indeed custodial interrogation. *Id.* at 601, 110 S.Ct. at 2650. "[C]ustodial interrogation for purposes of *Miranda* includes both express questioning and words or actions that ... the officer knows or reasonably should know are ... reasonably likely to elicit an incriminating response." *Id.* Nevertheless, the Court found the questions to be admissible under the "routine booking question exception," *i.e.,* "biographical data necessary to complete booking or pretrial services." *Id.* at 601–02, 110 S.Ct. at 2650. Because these questions were "reasonably related to the police's administrative concerns," they fell outside the protections of *Miranda* and, as such, their answers did not need to be suppressed. *Id.*

Although *Muniz* was only a plurality opinion on this issue, no court addressing the issue since *Muniz* has rejected the routine booking exception. *E.g., Clayton v. Gibson,* 199 F.3d 1162, 1173 (10th Cir. 1999); .*United States v. Brown,* 101 F.3d 1272, 1274 (8th Cir.1996); *United States v. D'Anjou,* 16 F.3d 604, 608 (4th Cir.1994); *United States v. Clark,* 982 F.2d 965, 968 (6th Cir.1993); *United States v. Leung,* 929 F.2d 1204, 1209 (7th Cir.1991); *Thomas v. United States,* 731 A.2d 415, 421 (D.C.1999); *Franks v. State,* 268 Ga. 238, 486 S.E.2d 594, 597 (1997); *Hughes v. State,* 346 Md. 80, 695 A.2d 132, 140 (1997); *Commonwealth v. White,* 422 Mass. 487, 663 N.E.2d 834, 844 (1996); *People v. Rodney,* 85 N.Y.2d 289, 624 N.Y.S.2d 95, 648 N.E.2d 471, 473 (1995); *State v. Stevens,* 181 Wis.2d 410, 511 N.W.2d 591, 599 (1994). For a listing of pre-*Muniz* federal decisions holding that *Miranda* does not apply to "biographical data necessary to complete booking or pretrial services," *see United States v. Horton,* 873 F.2d 180, 181 n. 2 (8th Cir.1989).

Nor is the application of the exception affected by whether a defendant specifically invoked his or her constitutional rights, as opposed to the mere failure to give the *Miranda* warnings, or by the fact that the inquiry pertained to a defendant's employment status as opposed to personal identification. In *United States v. Gotchis,* 803 F.2d 74 (2nd Cir.1986), DEA agents arrested the defendant while he was in possession of two packages of cocaine. The defendant immediately and specifically invoked his constitutional right to remain silent. Nevertheless, one of the agents proceeded to ask him for his identity, date of birth, address, telephone number, and employment status. To the latter inquiry, the defendant replied that he had been unemployed for eight years. As in the case *sub judice,* the government used this information at trial as circumstantial evidence that the defendant possessed the cocaine for the purpose of sale. On appeal, the United States Court of Appeals for the Second Circuit held that the defendant's employment status fell within the "benign category of basic identifying data required for booking and arraignment," noting that one purpose for such questioning is to obtain information to enable a magistrate to fix the appropriate amount for bail. *Id.* at 79 (internal quotation and citation omitted).

We have held that Section Eleven of the Constitution of Kentucky and the Fifth Amendment to the Constitution of the United States are coextensive and provide identical protections against self-incrimination. *Newman v. Stinson,* Ky., 489 S.W.2d 826, 829 (1972) *See also Hourigan v. Commonwealth,* Ky., 962 S.W.2d 860, 864 (1998); *Commonwealth v. Cooper,* Ky., 899 S.W.2d 75, 77 (1995). We therefore recognize as applicable in Kentucky the routine booking question exception to *Miranda,* including its application to inquiries about a defendant's employment status per *United States v. Gotchis.*

The only remaining issue is Appellant's claim that Detective Duvall deliberately elicited incriminating information under the guise of asking a routine booking question. As the United States Supreme Court explained in *Pennsylvania v. Muniz*, "[r]ecognizing a 'booking exception' to *Miranda* does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." 496 U.S. at 602 n. 14, 110 S.Ct. at 2650 n. 14. This allegation is properly decided pursuant to a motion to suppress the statement. RCr 9.78. The trial court held a suppression hearing and made a finding on the record that the inquiry with respect to Appellant's employment status was "not geared to elicit an incriminating response." That finding of fact is supported by substantial evidence and is, thus, conclusive of the issue. RCr 9.78.

Accordingly, the judgment of conviction and sentence imposed therefor by the Henderson Circuit Court, are affirmed.

All concur.