Susan LUKJAN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–CA–001509–MR.

Court of Appeals of Kentucky.

Jan. 13, 2012.

Thomas E. Clay (Argued), Mark G. Hall (Argued), Louisville, KY, Travis B. Lock, Bowling Green, KY, for appellant.

Jack Conway (Argued), Attorney General of Kentucky, David W. Barr (Argued), Assistant Attorney General, Frankfort, KY, for appellee.

Before TAYLOR, Chief Judge; ACREE and VANMETER, Judges.

## OPINION

ACREE, Judge:

Susan Lukjan appeals the July 23, 2010 judgment of the Jefferson Circuit Court by which she was convicted of arson, burning personal property to defraud an insurer, and committing a fraudulent insurance act over $300;[1] the judgment followed a jury trial and sentenced Lukjan to serve a total of twelve years of imprisonment. The bases for her appeal are a variety of trial errors outlined below. Finding certain of her arguments persuasive, we reverse the conviction and remand the matter to the circuit court for a new trial.

### I. *Facts and procedure*

Campbell's Gourmet Cottage was a retail business operated by Lukjan in the St. Matthews neighborhood of Louisville. Lukjan leased the premises from the Trinity Foundation.[2] The rental property abutted property occupied by Trinity High School. The property leased by Lukjan consisted of a building, the lot upon which the building stood, and an area reserved for customer parking.

On August 19, 2006, at approximately 5:20 p.m., firefighters were called to Campbell's Gourmet Kitchen. Callers to the emergency services dispatcher reported that smoke was pouring from all sides of the building, although no flames were

---

1. Kentucky Revised Statutes (KRS) 304.47–020 now has a threshold of $500.

2. The Trinity Foundation operates Trinity High School, a private Catholic school.

visible. Members of the St. Matthews Fire Department responded and eventually extinguished the blaze.

Not finding an obvious source of the fire, Fire Chief William Seng contacted the Louisville arson squad and requested an investigation into the cause and origin of the fire. Sergeant Richard Leonard and Major Henry Ott arrived on the scene shortly thereafter. Sgt. Leonard and Maj. Ott secured the building; in so doing, they discovered a stack of financial documents relating to Lukjan's business in two outdoor, open trash cans. Leonard and Ott collected the documents.

Following approximately three years of investigation, Lukjan was charged with arson, burning personal property to defraud an insurer, and committing a fraudulent insurance act. A jury trial ensued. Lukjan was convicted of all charges and sentenced to twelve years of imprisonment.

Significant to the Commonwealth's case against Lukjan were the testimony of expert witnesses and information revealed in the financial documents found in the trash can outside Campbell's Gourmet Kitchen. Three fire scene investigators designated as expert witnesses testified that in their opinion the fire was intentionally set in the basement of the building. The financial documents found in the trash cans supported the opinion of a forensic accountant employed by the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF) that Lukjan's financial status was "desperate." Taken together, this evidence tended to support the Commonwealth's theory that Lukjan intentionally set the fire in the basement of her business in order to collect substantial proceeds from her insurance policy.

Various rulings by the circuit court prevented Lukjan's attorneys from presenting her defense as they wished to do. The defendant's fire scene expert was excluded on the basis that he was not a licensed private investigator. Lukjan also opined that a storm earlier on the date of the fire could have been the cause of the blaze; she was prevented from presenting a lightning-strike report because the circuit court determined Lukjan had established no foundation to justify its presentation. The Commonwealth was also not required to produce an e-mail Lukjan believed contained exculpatory evidence, despite Lukjan's request for production pursuant to the discovery order. Finally, Lukjan claims she was impermissibly limited in her cross-examination of the Commonwealth's witnesses.

Lukjan alleges all of those rulings severely impaired her ability to present her case as she wished. She also asserts as error the circuit court's admission of testimony of the Commonwealth's expert witnesses without conducting a preliminary hearing. Finally, Lukjan believes the financial documents discovered in the trash were obtained by an illegal search, and were therefore improperly admitted at trial. We address each argument in turn.

## II. *Lukjan's expert witness*

Lukjan attempted to present the expert opinion testimony of William D. Hicks, Jr., an assistant professor at Eastern Kentucky University who teaches courses related to fire safety and fire investigations. As the Commonwealth indicated in its brief, *voir dire* of this witness was relatively lengthy, and his considerable *curriculum vitae* was published to the jury over the Commonwealth's objection.

However, the circuit court interpreted KRS 329A.015 and KRS 329A.010 as disqualifying Hicks as an expert. KRS 329A.015 prohibits an individual from:

*hold[ing] himself or herself out to the public* as a private investigator, or [to] use any terms, titles, or abbreviations that express, infer [sic], or imply that the person is licensed as a private investigator unless the person at the time holds a license to practice private investigating issued and validly existing under the laws of this Commonwealth as provided in this chapter.

(Emphasis added.) "Private investigating" is defined as "the act of any individual or company *engaging in the business of* obtaining or furnishing information with reference to ... [t]he cause or responsibility for fires ... [.]" KRS 329A.010(4)(d) (emphasis added). It is undisputed that Hicks was not a licensed private investigator.

The circuit court ruled that the plain language of these statutes prohibited the testimony because "furnishing information with reference to ... [t]he cause or responsibility for" the fire at Campbell's Gourmet Cottage is precisely what the witness would be asked to do on the stand. Permitting Hicks to testify, the circuit court reasoned, would amount to permitting a crime to be committed in the courtroom.[3] The Commonwealth takes that very stance on appeal.

■ Ordinarily, a trial court's determination as to whether a witness is qualified to give expert testimony under Kentucky Rules of Evidence (KRE) 702 is subject to an abuse of discretion standard of review. *See Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky.2000); *Fugate v. Commonwealth*, 993 S.W.2d 931, 935 (Ky. 1999); *Murphy by Murphy v. Montgomery Elevator Co.*, 957 S.W.2d 297, 299 (Ky.

App.1997). "An abuse of discretion occurs when a 'trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Farmland Mut. Ins. Co.*, 36 S.W.3d at 378 (quoting *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000)).

■ In this instance, however, we are reviewing the circuit court's interpretation of a statute and do so *de novo*. *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998). The circuit court's interpretation of the statutes in question, therefore, is owed no deference.

While the circuit court's reading of KRS 329A.015 and KRS 329A.010 is understandable, it is incorrect. The former statute prohibits holding oneself out to the public as a private investigator absent a license to do so; it makes no mention of the evidentiary value of the testimony of a proposed expert witness who is not so licensed. KRS 329A.010 does not itself prohibit any behavior, but defines "private investigating" to include "furnishing information" about "[t]he cause or responsibility for [a fire.]"

■ Reading the plain language of the statutes, we believe the General Assembly meant only to prohibit an unlicensed individual from offering private investigation services to the public; hence, the prohibition against "hold[ing oneself] out to the public as a private investigator[.]" KRS 329A.015. Providing testimony in a court proceeding is not the equivalent of selling the public one's services as a private detective.

---

3. *In camera*, Hicks testified that he had obtained from the website of the Kentucky Board of Licensure for Private Investigators the name of an attorney assigned from the Office of the Attorney General, that he telephoned her, and that she opined it was not a

violation of the licensure statutes for him to testify in court proceedings. The circuit court indicated that a written opinion to that effect from the Office of the Attorney General might have persuaded the court to allow Hicks's testimony.

This view is supported by what we perceive to be the proper role of the Kentucky Board of Licensure for Private Investigators. The Board is empowered to oversee the licensure and discipline of private investigators, and regulates those individuals and companies in the business of providing private investigative services. *See* KRS 329A.025; *see also* 201 Kentucky Administrative Regulations (KAR) 41:020, 201 KAR 41:080. Our review has uncovered nothing in the relevant statutes or the applicable regulations which specifically addresses an individual's ability to testify as an expert witness on the cause and/or origin of a fire. Indeed, it appears the Board has no role to play in that sort of inquiry.

Our position is further supported by the unpublished opinion of this Court, *Hincapie v. Charron*, 2006 WL 1947765 (Ky.App. 2006) (2005–CA–000342–MR).[4] In that case, a different panel of this Court was utterly dismissive of the position the Commonwealth now takes: namely, that KRS 329A.095 prohibits an unlicensed, but otherwise qualified, individual to testify as to the cause and origin of a fire. *Id.* at *3.

> As to the ... premise that [the expert witness] should not have been permitted to testify because he did not have a license under KRS 329A.095 to conduct fire or arson investigations in the state of Kentucky, KRE 702, which governs the admissibility of experts, does not require any particular licensure. After conducting a *Daubert* hearing, the trial court concluded that [the witness] was qualified as an expert, and this Court will not disturb that ruling solely on the

grounds of licensure in the face of this expert's knowledge, skill, experience, training, and education.

*Id.*

Kentucky's statutes governing the practice of private investigating are simply not meant to have any evidentiary effect, and to prohibit the testimony of Lukjan's expert on that basis was erroneous.

█ We further hold that excluding Hicks's testimony was not harmless. *See Rogers v. Commonwealth*, 60 S.W.3d 555, 559 (Ky.2001) (finding that the trial court's erroneous decision to exclude certain testimony was harmless error because there was no substantial possibility that the jury's verdict would have been any different if the testimony had been admitted). In the absence of Hicks's testimony, Lukjan's defense consisted of no expert opinion rebutting the Commonwealth's evidence that arson was indeed the cause of the fire. Such testimony raises the substantial possibility that the jury would have reached a different outcome.

Accordingly, we reverse the order of the circuit court finding Hicks could not testify on the basis of KRS 329A.015, reverse Lukjan's conviction, and remand the case for a new trial. On remand, the circuit court must consider whether any of Lukjan's proffered experts, including Hicks, qualify, based on the guidelines found in KRE 702 and accompanying caselaw. Under those standards, licensure is not necessary, but may be a factor. *See Fugate v. Commonwealth*, 993 S.W.2d 931 at 935.[5]

4. We rely on this unpublished opinion pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c), which provides, "unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published

opinion that would adequately address the issue before the court."

5. Our review of Lukjan's conviction could end here; however, we have elected to address certain of Lukjan's other arguments which are likely to arise again on remand. *See Harp*

### III. The Commonwealth's expert witnesses

Lukjan next argues that the circuit court improperly admitted the testimony of several of the Commonwealth's witnesses without conducting a hearing as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its federal and state progeny. Lukjan's brief specifically addresses the testimony of three of the Commonwealth's witnesses— Major Ott and Sergeant Leonard, both of the Louisville arson squad, and ATF Agent Michael Jaraczeski—and our analysis will be limited accordingly.[6]

The core of the three witnesses' testimony was their identical opinions that the fire had been intentionally started in the basement of Campbell's Gourmet Cottage when an individual applied an open flame to flammable materials, namely cardboard boxes and packaging peanuts. The three experts presented their fire investigation credentials to the jury, including their respective courses of education, training, and experience. Their testimony formed the primary direct evidence of the cause and origin of the fire,[7] while other witnesses for the Commonwealth provided supplemental testimony regarding the factual circumstances surrounding the day of the fire and the investigation, in addition to the financial status of Lukjan and her business.

Once again, KRE 702 governs the admissibility of testimony given by an expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

KRE 702. The Rule mirrors its federal counterpart and reflects a liberal approach to the admission of expert testimony. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 6.15[2], p. 427 (4th ed. Lexis Nexis 2003).

*Daubert*, of course, is the watershed case of the United States Supreme Court which establishes that, in accordance with Federal Rule of Evidence 702, any "scientific testimony or evidence admitted [must be] not only relevant, but reliable."[8] 509 U.S. at 589, 113 S.Ct. at 2795. In conducting this inquiry, proper considerations include whether the theory or technique at issue can be or has been tested; whether it "has been subjected to peer review and

---

*v. Commonwealth*, 266 S.W.3d 813, 817 (Ky. 2008) ("We must also address the remaining issues because they ... concern matters likely to arise upon remand....").

6. The Commonwealth also presented the testimony of a number of other expert witnesses not specifically contested in Lukjan's appellate brief.

7. Another witness, Miranda Hewlett, a fire investigator for Lukjan's insurance provider,

testified that she, too, had formed the opinion that the fire had been intentionally set and that it began in the basement. Lukjan has not appealed the admission of Hewlett's testimony.

8. Kentucky courts adopted this rule in *Mitchell v. Commonwealth*, 908 S.W.2d 100 (Ky.1995)(*overruled on other grounds by Fugate*, 993 S.W.2d 931).

publication[;]" its "known or potential rate of error[;]" and whether it enjoys general acceptance in the scientific community. 509 U.S. at 593–94, 113 S.Ct. at 2797.

In *Kumho Tire Co., Ltd. v. Carmichael,* the United States Supreme Court answered in the affirmative the question whether the factors articulated in *Daubert* must be applied to expert testimony which is not "scientific," but rather "technical" or "specialized." 526 U.S. 137, 149, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999) ("where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline.") (Citation omitted). The Supreme Court of Kentucky adopted that policy for purposes of KRE 702 in *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky.2000).

The inquiry incumbent upon the trial court is a flexible one, and the factors enunciated in *Daubert* are neither mandatory nor exclusive. *Daubert,* 509 U.S. at 594–95, 113 S.Ct. at 2797.

■ To fulfill its function as a "gatekeeper" of proper opinion evidence, the circuit court must engage in a two-fold inquiry: (1) whether the proposed evidence consists of specialized, technical, or scientific knowledge (2) that "will assist the trier of fact to understand or determine a fact in issue." *Goodyear Tire,* 11 S.W.3d at 578. In other words, to satisfy the first prong of the inquiry, the trial court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid[,]" and the second prong requires a determination "of whether that

reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 600, 113 S.Ct. at 2800 (citation omitted).

■ In order to elicit sufficient evidence to satisfy the requirements of *Daubert,* a trial court must frequently conduct a preliminary hearing on the proposed specialized evidence and enter findings of fact and conclusions of law accordingly. *See Commonwealth v. Christie,* 98 S.W.3d 485, 488 (Ky.2002).

A preliminary hearing is not always necessary; however, "a trial court should only rule on the admissibility of expert testimony without first holding a hearing 'when the record [before it] is complete enough to measure the proffered testimony against the proper standards of reliability and relevance.'" *Id.* (quoting *Jahn v. Equine Services, P.S.C.,* 233 F.3d 382, 393 (6th Cir.2000)).[9]

■ When the record is adequate, the minimum a court must do to fulfill the requirements of *Daubert* and its progeny is to make an affirmative statement on the record that the court has "reviewed the material submitted by the parties [relevant] to the testimony of the [expert witnesses] and [has] concluded that the testimony was reliable." *Hyman & Armstrong, PSC v. Gunderson,* 279 S.W.3d 93, 101 (Ky.2008) (citing *City of Owensboro v. Adams,* 136 S.W.3d 446, 451 (Ky.2004)). "In so doing, however, the court need not recite any of the *Daubert* factors, so long as the record is clear that the court effectively conducted a *Daubert* inquiry." *Id.*

■ Various standards of review govern our treatment of the issues on appeal. A

---

9. The Kentucky Supreme Court went on in *Christie,* to say, "[u]sually, the record upon which a trial court can make an admissibility decision without a hearing will consist of the proposed expert's reports, affidavits, deposition testimony, existing precedent, and the like." *Christie,* 98 S.W.3d at 488–89.

trial court's decision to not conduct a preliminary hearing is reviewed for abuse of discretion. *Hamilton v. Commonwealth*, 293 S.W.3d 413, 417–18 (Ky.App.2009) (citing *Hyman & Armstrong*, 279 S.W.3d 93). "An appellate court's standard of review relative to a ruling on the *reliability* of [specialized] evidence under *Daubert* is whether the ruling is supported by substantial evidence. The ruling as to the *relevance* of the [specialized] evidence is reviewed under an abuse of discretion standard." *Hyman & Armstrong*, 279 S.W.3d at 101–02 (citing *Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky.2004)).

 Here, the trial court found that the testimony of the Commonwealth's expert witnesses was "scientific"[10] in nature and would be helpful to the jury in determining Lukjan's fate.[11] On its face, this appears to satisfy the minimum requirements articulated in *Hyman & Armstrong*. We find, however, the circuit court failed to adequately perform its gatekeeping function because it neither conducted an evidentiary hearing nor considered a record we could consider "adequate."

More specifically, the circuit court declined to conduct a preliminary hearing and chose to rely solely upon the testimony of the witnesses who had testified prior to Lukjan's *Daubert* motion. None of these previous witnesses were presented as an expert, nor did they offer evidence other than their own personal observations of the scene of the fire. Their testimony in no way addressed—or even considered—the proposed testimony of the three expert witnesses now at issue, and it was, therefore, not capable of sufficiently informing the circuit court that it could "measure the proffered testimony against the proper standards of reliability and relevance." *Christie*, 98 S.W.3d at 488 (internal quotation marks and citation omitted). Nevertheless, the Commonwealth's expert witnesses were permitted to testify regarding the methodology of their fire scene investigation and their opinions regarding the cause and origin of the fire. The record the circuit court considered was insufficient to support a determination whether expert testimony was reliable.

We acknowledge that the record available to the circuit court, but which the court declined to consider, may have been sufficient for the circuit court to enter the requisite findings without conducting a preliminary hearing. In accordance with the discovery order, the Commonwealth produced to Lukjan, and filed with the circuit court, certain information and evidence as required by Kentucky Rules of Criminal Procedure (RCr). Had the trial court reviewed those materials and made a finding that the proposed expert testimony and specialized evidence were reliable and relevant, we would review those findings for clear error and abuse of discretion, respectively. *Hyman & Armstrong*, 279 S.W.3d at 101–02. However, in failing to consider an adequate record, the circuit judge committed an abuse of discretion.[12]

---

**10.** Strictly speaking, the testimony was not scientific; rather, the witnesses were law enforcement officers who specialized in fire investigations, and their testimony would more properly be characterized as "specialized knowledge," rather than "scientific." In *Kumho Tire*, however, the U.S. Supreme Court opined that there is no "convincing need to make … distinctions" among the three categories listed in KRE 702—scientific, techni-cal, or specialized information. 526 U.S. at 148, 119 S.Ct. at 1174.

**11.** Although this is precisely the inquiry required by *Daubert*, the circuit judge also declared that there was no *Daubert* issue to be decided and declined to enter findings that the opinion testimony was admissible under *Daubert*.

**12.** Neither party requested that this Court review the substantial discovery file (according

As discussed previously in this opinion, a trial court's evidentiary errors do not mandate reversal if the error was harmless. *Hamilton v. Commonwealth*, 293 S.W.3d 413, 421 (Ky.App.2009). To determine whether an evidentiary error was harmless, a reviewing court must determine "whether there exists a reasonable possibility that the outcome of the trial would have been different, absent the testimony that was allowed into evidence as the result of error." *Id.*

 Without the Commonwealth's three arson experts, there was little direct evidence that the fire was the result of arson, rather than some other cause. Indeed, the testimony of the witnesses now at issue was powerful given their positions of esteem and authority. As a result, the absence of their testimony would have seriously weakened the Commonwealth's case, and we, therefore, cannot say the error was harmless. We reverse the circuit court's decision to admit the specialized evidence presented by the Commonwealth without either conducting a preliminary hearing or examining the portions of the record which would have enabled the court to determine the reliability and relevance of the evidence.

## IV. *Admission of financial documents found in trash*

Sgt. Leonard and Maj. Ott, while securing the scene of the fire just after the fire had been put out, discovered a stack of overdue bills in two open trash cans located approximately two feet beyond a rear entrance to Campbell's Gourmet Cottage. They did not have a warrant to search the property or to seize evidence, though Lukjan gave written consent to search after the documents were seized.[13] Overruling Lukjan's motion to suppress, the circuit court ruled the documents were admissible. The overdue notices were used by the Commonwealth to support its theory that Lukjan was motivated to commit arson because the business was in dire financial straits.

At the suppression hearing, the testimony of Leonard and Ott revealed the following: the documents were spotted in open trash cans just outside Campbell's Gourmet Cottage, at the back of the building. The trash cans were located near a sidewalk which appeared to be shared by Campbell's Gourmet Cottage and Trinity. Only one document was fully visible without disturbing the stack or picking up the papers. At least one investigator believed the items had been discarded because they were found in the trash. Leonard and Ott conceded that the trash cans were on private property, and both agreed that by simply looking at the only visible document, they could not tell that a crime had been committed.

The circuit court ruled the search was not illegal and, therefore, the documents should not be excluded, on various grounds: (1) that Lukjan had no privacy interest in the documents because she had

---

to Lukjan's counsel, comprising some 11,000 pages) to determine if it was sufficient for the circuit court to make the requisite findings regarding the reliability and relevance of the evidence, and, therefore, we did not do so. We do not reach a conclusion as to the sufficiency of the full record before the circuit court.

13. While this is apparently a matter of some disagreement, the timing of Lukjan's grant of consent is irrelevant for purposes of this analysis. Sgt. Leonard testified that he did not remember whether consent was obtained before or after the documents were seized, but Maj. Ott testified affirmatively that consent followed the seizure of the documents. The Commonwealth has represented in its brief that "It is not known [if] the trash cans were searched before or after consent was given."

discarded them in trash cans located "in the course of a public walkway;" (2) that Lukjan had consented to the search orally and in writing; and (3) that there were exigent circumstances related to suppressing the fire which justified their warrantless seizure. Because we affirm the court's ruling on the first ground proposed, we need not address the other two.

Lukjan argues these documents should not have been admitted because they were obtained without a warrant, and because no exception to the warrant requirement justified their seizure.

Our review of a circuit court's denial of a motion to suppress evidence is twofold. First, we determine whether the findings of fact are supported by substantial evidence; "[i]f supported by substantial evidence the factual findings of the trial court shall be conclusive." RCr 9.78. Then, "[w]hen the findings of fact are supported by substantial evidence, . . . the question necessarily becomes[ ] whether the rule of law as applied to the established facts is or is not violated." *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998) (citations and internal quotation marks omitted).

■ The finding of fact relevant to this analysis is that the documents had been found in a trash can near a public walkway. That finding was supported by the testimony of Sgt. Leonard, who said the trash cans were located near a walkway that connected to a public street, Sherrin Avenue. His statement was not contradicted in any way. The uncontroverted, sworn statement of an eyewitness certainly constitutes substantial evidence.

■ We turn now to the circuit court's legal conclusion that Lukjan had no rea-

sonable expectation of privacy in the trash can.

■ As a general rule, the Fourth Amendment to the U.S. Constitution and the Tenth Amendment to the Kentucky Constitution [14] prohibit unreasonable searches and seizures. *Williams v. Commonwealth*, 213 S.W.3d 671 (Ky.2006) (citing *New York v. Burger*, 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987)). This rule applies to searches of commercial property as well as searches of a private residence. *Burger*, 482 U.S. at 699–700, 107 S.Ct. at 2642 ("An owner or operator of a business . . . has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable[.]") (Citation omitted). The home has been a traditional locus of expectations of privacy and, as such, has enjoyed substantial protections. *See Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). The U.S. Supreme Court has held, however, "An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." *Burger*, 482 U.S. at 700, 107 S.Ct. at 2642 (citation omitted).

■ Some searches and seizures do not require a warrant to be deemed legal. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment Protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Accordingly, items which have

---

14. Because "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment[,]" we need perform only one analysis. *LaFollette v.* *Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996); *Estep v. Commonwealth*, Ky., 663 S.W.2d 213 (1983).

been discarded and placed for pickup by a trash collection service have been found not to be subject to the protections of the Fourth Amendment, and therefore police do not need a warrant to lawfully seize them. *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

■ To determine whether the investigators' warrantless seizure of Lukjan's financial documents was permissible, we must engage in the traditional privacy analysis. To successfully show the warrantless search was illegal, a defendant must demonstrate: (1) that she had a subjective expectation of privacy in the item seized; and (2) that "society is prepared to accept that expectation as objectively reasonable." *Greenwood,* 486 U.S. at 39–40, 108 S.Ct. at 1628.

Our review of the record does not reveal that Lukjan ever expressed a subjective belief that the financial documents were in a private location, so her assertion that the warrantless search was improper fails for that reason. There are also no circumstantial reasons to believe Lukjan expected that her documents were private. They were not found inside an opaque bag, nor was there even a lid on the trash can. *See Greenwood,* 486 U.S. at 39, 108 S.Ct. at 1628 (placing garbage in opaque bags constitutes manifestation of subjective intent to keep the contents private). She took no significant steps to try to shield the documents from public view.

Furthermore, we conclude that Lukjan enjoyed no objective privacy interest in the contents of the trash. The documents were found in the open near a shared walkway, on the premises of a retail business, where foot and automobile traffic would be not only expected but encouraged. Having been found in a trash can, albeit not placed next to the road for collection, the documents appeared to have been discarded. There was no evidence

that Lukjan used this area to securely store any items related to the operation of Campbell's Gourmet Cottage. Surely, it should be expected that customers and other users of the walkway might have ready access to the trash can and its contents.

Lukjan has demonstrated neither a subjective belief that the documents were in a private area, nor a convincing reason the public would recognize any claim to privacy. We affirm the circuit court's admission of the documents found in the trash can because Lukjan had no expectation of privacy in them.

## V. *Commonwealth's failure to produce allegedly exculpatory e-mails*

■ Lukjan protests that the Commonwealth failed to produce certain e-mails exchanged between investigators, allegedly in violation of the circuit court's discovery order and RCr 7.26. The only description she supplies of the e-mails, however, is as follows: "Discovery turned over to Lukjan prior to trial referred to seemingly exculpatory emails circulated between arson investigators and other witnesses." (Appellant's brief, p. 13). Lukjan does not identify what portion of the discovery file "referred to" these e-mails, nor does she recount with any particularity the language in the discovery file which led her to believe the e-mails were exculpatory.

Because of Lukjan's failure to direct our attention to the necessary portion of the record and because this argument is so vague as to evade our ability to meaningfully review the alleged error, we will not consider it. Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v) (requiring that each "ARGUMENT" presented in an appellant's brief contain not only "a statement with reference to the record showing

whether the issue was properly preserved for review[,]" but also "ample supportive references to the record[.]").

## VI. *Exclusion of lightning report*

██ Lukjan sought to introduce into evidence a report produced by a company called Vaisala, Inc. The report purported to be "an online verification report that objectively and accurately reports individual cloud-to-ground lightning strikes as [sic] a specific location." More specifically, the report was said to have documented 236 lightning strikes within a 5–mile radius of Campbell's Gourmet Cottage, from August 18, 2006, at 5:35 p.m., to August 19, 2006, at 5:35 p.m. The purpose of the report was apparently to raise the possibility that the fire was started by lightning, and not arson, as the Commonwealth contended. Accompanying the report was a certification signed by Martin J. Murphy, who purported to be the records custodian for Vaisala, Inc.; the document was notarized in Arizona.

The circuit court declined to admit the report on the basis that there was no foundation for its admission. On appeal, Lukjan contends it should have been admitted because it complied with KRE 803(6) and KRE 902(11).[15] We disagree.

KRE 803 is the business records exception. The relevant portion of KRE 803 provides that records kept in the ordinary course of business may be admitted, despite the fact that they are hearsay, as long as a custodian or other qualified witness testifies that the records were made in the ordinary course of business. KRE 803(6). That testimony forms the "foundation" to admit the business record. One element of this rule is that the entry must

be "made at or near the time by, or from information transmitted by, *a person with knowledge* [.]" *Id.* (Emphasis added.)

KRE 803(6)(A) codifies the foundation exception: "A custodian or other qualified witness, as required above, is unnecessary when the evidence offered under this provision consists of ... business records which satisfy the requirements of KRE 902(11)[.]" KRE 902(11)(A), in turn, delineates the foundation exemption for admission of business records:

> Unless the sources of information or other circumstances indicate lack of trustworthiness, the original or a duplicate of a record of regularly conducted activity within the scope of KRE 803(6) or KRE 803(7), which the custodian thereof certifies:
>
> (i) Was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) *a person with knowledge of those matters;*
>
> (ii) Is kept in the course of the regularly conducted activity; and
>
> (iii) Was made by the regularly conducted activity as a regular practice.

KRE 902(11)(A) (emphasis added).

To assess the admissibility of the lightning strike report under these rules, we must examine the records custodian's certification. The relevant portion of the certification states:

> The undersigned [Martin J. Murphy] hereby certifies that the attached copies [of the lightning strike report] are true and accurate reproductions of original or microfilmed records maintained by Vaisala, Inc. in the regular course of business, and were prepared during the reg-

---

**15.** Lukjan's appellate brief actually states that the report complies with KRE 903(11); however, since there is no such subpart to Rule 903, and because KRE 803(6)(A) specifically refers to KRE 902(11), we believe this to be a mere typographical error and proceed accordingly.

ularly conducted activity set forth herein as a regular practice of this firm, and that said records were made and kept in the course of the regularly conducted business activity of this firm, and were prepared at or near the time of the matter set forth herein. This certification is given pursuant to KRE 803(6)(A) and 902(11), by the undersigned Custodian of Records in lieu of his/her personal appearance.

Lukjan contends the certification consists of a verbatim recitation of KRE 803(6)(A) and KRE 902(11). That is not true in at least one important respect—there is no certification that the recordings were made by a person; rather, the certification represents the data is detected and recorded by National Lightning Detection Network Sensors, and processed by "[h]ighly refined algorithms[.]" Accordingly, this data is more akin to the "scientific, technical, or specialized" information-whose admissibility is governed by KRE 702—than to a business record as contemplated by KRE 803(6) and KRE 902(11).

The circuit court was correct to refuse to admit Lukjan's lightning strike report as a business record, and we therefore affirm on this matter.

### VII. *Remaining issues*

The other issues Lukjan raises on appeal are rendered moot by our decision to reverse the conviction and remand. We will not address them.

### VIII. *Conclusions*

Lukjan's witness, presented as an expert on fire scene investigations, was improperly excluded on the basis of KRS 329A.015. In addition, the circuit court improperly admitted the opinion testimony of three of the Commonwealth's expert witnesses without conducting a preliminary hearing or reviewing an adequate record. Finally, the financial documents found in the trash can outside Campbell's Gourmet Cottage were not obtained as the result of an illegal search of the property, and the lightning-strike report was correctly excluded because it is not a business record.

For the foregoing reasons, we reverse Lukjan's conviction and remand for a new trial.

VANMETER, Judge, Concurs.

TAYLOR, Chief Judge, Concurs in Result Only.