K. THOMPSON, JUDGE:
*96 Dale Thomas Hammond appeals from the judgment and sentence of the Jefferson Circuit Court following a jury trial. He argues the trial court abused its discretion by excluding his expert witness and admitting a prejudicial photograph. We agree the trial court abused its discretion by excluding Hammond's expert's testimony about sexual role playing without conducting a proper Daubert hearing and admitting the photograph of Hammond's genitals.
In September 2015, Hammond was indicted for unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities.
Hammond's jury trial began on March 21, 2017. During the trial, Investigator Matt Hedden testified Hammond responded to an advertisement Investigator Hedden placed on Louisville Craigslist personals section from a young woman named "Jenna Bruce" who was new to the area and seeking companionship. Investigator Hedden, who posed as Jenna, testified he exchanged texts and emails with Hammond. Although Jenna informed Hammond that she lived at home with her mother, she was fifteen and did not want to get pregnant given her age, Hammond sent Jenna very sexually explicit messages discussing the sexual acts he wished to perform on her, sent her a photograph of his erect penis and attempted to meet with her. A greatly enlarged version of the photograph Hammond sent Jenna was admitted into evidence[1] despite Hammond's attempts to exclude it through a previous motion in limine and contemporaneous objection.
Hammond testified that he did not believe Jenna was fifteen and instead believed he was chatting with an adult who was role playing. Hammond attempted to introduce testimony of an expert witness to explain sexual role playing and fantasies to support his own testimony. The trial court excluded this testimony.
The jury found Hammond guilty of unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities and recommended a sentence of one year of incarceration. On June 1, 2017, in a judgment of conviction and sentence, Hammond was sentenced in accordance with this recommendation.
Hammond filed a motion for a new trial or judgment notwithstanding the verdict on several grounds. The trial court denied this motion.
Hammond argues the trial court abused its discretion by excluding his expert's testimony, which prevented Hammond *97 from adequately presenting his defense that he did not believe he was communicating with a fifteen-year old girl but was engaging in role play with an adult pretending to be such a girl. The Commonwealth argues the circuit court properly excluded this evidence as the expert's testimony did not assist the trier of fact because it is common knowledge to ordinary people that there is sexual role playing.
The expert Hammond wished to call was Dr. James Beggan. During a Daubert hearing, Dr. Beggan testified he is a University of Louisville sociology professor with almost twenty-eight years of experience teaching psychology and sociology. His area of research is human sexuality and over the last ten to fifteen years, he has published ten to twelve research-based papers relating to human sexuality in peer-reviewed journals. He has taught the topic of human sexuality for about twelve years including teaching about sexual fantasies and role playing as supported by scientific research and studies. Dr. Beggan reviewed the messages between Hammond and Jenna and opined they appeared to be consistent with behavior he has seen between people who are role playing or fantasizing and, though it could be possible that this exchange was an honest exchange, it seemed implausible that they would communicate in this way without it being a form of sexual role play or fantasy.
The Commonwealth objected to Dr. Beggan's expert testimony because his research was not focused on child sex predators, his testimony was used to bolster Hammond's testimony and because Dr. Beggan was informed of the defendant's defense before he reviewed the transcripts. Hammond countered that in voir dire the jury's lack of responses to his questions about sexual role playing and fantasies indicated they could benefit from Dr. Beggan's testimony in understanding that sexual role playing and fantasizing exists and is studied.
The trial court excluded Dr. Beggan's testimony, explaining it was significant that Dr. Beggan had never testified as an expert before, he was told his conclusion before he began to work on the case, and his opinion would not assist the trier of fact.
Hammond preserved Dr. Beggan's testimony through avowel. Dr. Beggan testified that sexual fetishes, fantasies and sexual role playing are confirmed behaviors people engage in that are studied in his field and reiterated his opinion that in reviewing the transcript of the messages between Hammond and Jenna the implausibility of the conversation supported the idea that this was sexual role playing.
We review the trial court's decision to exclude the testimony of an expert witness for abuse of discretion. Garrett v. Commonwealth , 534 S.W.3d 217, 221 (Ky. 2017). In doing so, we recognize there is "considerable breadth of discretion possessed by trial courts in performing their gate keeping function under [Kentucky Rules of Evidence] KRE 702 [.]" Toyota Motor Corp. v. Gregory , 136 S.W.3d 35, 39 (Ky. 2004).
Expert opinion evidence is admissible so long as (1) the witness is qualified to render an opinion on the subject matter, (2) the subject matter satisfies the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), (3) the subject matter satisfies the test of relevancy set forth in KRE 401, subject to the balancing of probativeness against prejudice required by KRE 403, and (4) the opinion will assist the trier of fact per KRE 702.
*98 Stringer v. Commonwealth , 956 S.W.2d 883, 891 (Ky. 1997).
"The Daubert test is designed to keep out unreliable or 'pseudoscientific' expert scientific testimony that would confuse or mislead the jury, or that cannot legitimately be challenged in a courtroom." Commonwealth v. Martin , 290 S.W.3d 59, 67 (Ky. App. 2008). "The gatekeeping function of the trial court is restricted to keeping out unreliable expert testimony, not to assessing the weight of the testimony. This latter role is assigned to the jury." Id.
KRE 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
(1) The testimony is based upon sufficient facts or data;
(2) The testimony is the product of reliable principles and methods; and
(3) The witness has applied the principles and methods reliably to the facts of the case.
KRE 702 "mirrors its federal counterpart and reflects a liberal approach to the admission of expert testimony." Lukjan v. Commonwealth , 358 S.W.3d 33, 40 (Ky. App. 2012).
The first two reasons the trial court gave for excluding Dr. Beggan's testimony are not acceptable bases for such an action. An expert's testimony should be permitted if the expert is "qualified to render an opinion on the subject matter[.]" Stringer , 956 S.W.2d at 891. Just because Dr. Beggan had never testified as an expert and was told Hammond's defense in the hope that Dr. Beggan could support this defense did not mean Dr. Beggan was not qualified to render an opinion. Every expert who testifies must at some point testify for the first time. Every expert knows why that expert is being hired, though of course not every expert will ultimately be able to testify in the manner desired.
It was not appropriate to exclude Dr. Beggan's testimony simply because the trial court or the Commonwealth disagreed with his conclusions. "The proper avenue ... to address ... concerns about the methodology and reliability of [an expert's] testimony [is] through cross-examination, as well as through the testimony of [the Commonwealth's] own expert." Garrett v. Commonwealth , 534 S.W.3d 217, 223 (Ky. 2017). A jury is more than capable of hearing conflicting expert witness testimony and weighing it in making its decision. Martin , 290 S.W.3d at 69.
The trial court's judgment that Dr. Beggan's testimony would not assist the trier of fact requires additional analysis. KRE 702 provides for the admission of expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Essentially, this determination is about relevance and reliability. Goodyear Tire & Rubber Co. v. Thompson , 11 S.W.3d 575, 578 (Ky. 2000).
We do not agree with the Commonwealth that because the jurors may have heard of sexual role playing, they could evaluate whether Hammond was engaging in such behavior based on the chat transcripts. Although sexual role playing is "not uncommon" that "does not mean that a jury would necessarily understand the specifics of the activity[.]" Baptist Healthcare Sys., Inc. v. Miller , 177 S.W.3d 676, 680 (Ky. 2005). See *99 Kentucky River Med. Ctr. v. McIntosh , 319 S.W.3d 385, 396 (Ky. 2010) (explaining that although members of the public are familiar with hospital entrances, it does not mean it is within their common knowledge to determine whether the emergency room entrance at issue was safe).
We are persuaded that expert testimony about sexual role playing would have assisted the jury to understand and weigh Hammond's defense based upon the reasoning in United States v. Hite , 769 F.3d 1154 (D.C. Cir. 2014) and United States v. Joseph , 542 F.3d 13 (2d Cir. 2008), abrogated on other grounds by United States v. Ferguson , 676 F.3d 260, 276 n.14 (2d Cir. 2011). In both cases, the defendants were convicted under 18 United States Code § 2422(b) of attempting to persuade a minor to engage in unlawful sexual activity through conversations over the internet with undercover detectives, a crime very similar to the one for which Hammond was convicted.
In Hite , 769 F.3d at 1168, the defendant attempted to call an expert witness who would testify as to "the difference between a desire actually to engage in sexual activity with a minor and mere fantasy and role playing," in support of the defendant's "fantasy-only" defense. In holding that the expert witness should have been allowed to testify, the Court explained this testimony could "shed light on what may be an unfamiliar topic to most jurors: sexual fantasy involving children, particularly the kind that unfolds in the virtual realm of the Internet" and "expert testimony that generally explains the world of sexual fantasy on the Internet is permissible." Id. at 1170.
In Joseph , 542 F.3d at 16, the jury had to decide whether the defendant "enticed 'Julie' to meet with him for the purpose of engaging in unlawful sexual conduct with a person he thought was a minor, or whether, as he claimed, he was engaged only in role-playing, met her to determine her true identity, and had decided not to have any involvement with her if she turned out to be a minor." After the Court reversed the defendant's conviction and ordered a retrial, it urged the trial court to give more thorough consideration to allowing the admission of the defense expert who was excluded from testifying "about role-playing in the context of sexually explicit conversations on the Internet[,] ... [the] distinct culture of the Internet in which one can become a 'fantasy character[,]' [and] ... the realities and motivations of online role-playing via chatrooms and email." Id. at 21. The Court reasoned the expert's opinions were relevant and "appear to be highly likely to assist the jury 'to understand the evidence[,]' " explaining:
Although some jurors may have familiarity with Internet messaging, it is unlikely that the average juror is familiar with the role-playing activity that [the expert witness] was prepared to explain in the specific context of sexually oriented conversation in cyberspace.... Obviously a jury would not have to accept [the defendant's] claim that he planned only to meet "Julie" to learn who she was and that he lacked any intention to engage in sexual conduct with her, but the frequent occurrence of such "de-mask[ing]" of chat-room participants might provide support for his defense.
Id. at 21-22. See also United States v. Valle , 807 F.3d 508, 516-23 (2d Cir. 2015) (discussing the difficulty of distinguishing between "fantasy chats" with no actual intent to commit crimes and "real chats" containing criminal intent); United States v. Laureys , 866 F.3d 432, 438-42 (D.C. Cir. 2017) (ruling defendant received ineffective assistance of counsel where counsel failed to secure an expert witness to testify regarding internet fantasy defense).
*100 Based on the reasoning contained in Hite and Joseph , we conclude that Dr. Beggan's testimony should not have been excluded as not aiding the trier of fact. We conclude this testimony would have helped the jury determine whether Hammond was engaging in role playing behavior and would have aided the jury in determining whether Hammond knew Jenna was fifteen, a necessary element of the crime. The trial court, therefore, abused its discretion in not conducting a full Daubert hearing in which the relevance and reliability of Dr. Beggan's testimony was considered before excluding this testimony.
It was not harmless to exclude Dr. Beggan's testimony without a full Daubert hearing because, in its absence, Hammond's defense was reliant solely on Hammond's own testimony to rebut the Commonwealth's evidence that the chat transcripts showed he used electronic means to induce a minor to engage in sexual activities. In Joseph , the Court noted that a defendant was still harmed by the exclusion of an expert's testimony about role playing even though the defendant was able to testify to his role playing defense, explaining "when the Government implores a jury to find the defendant and his explanation not credible, we think the presentation of that explanation from a qualified expert would be significant, especially where the explanation is not one with which jurors are likely to have familiarity." Joseph , 542 F.3d at 22 n.10. See Lukjan , 358 S.W.3d at 39 (excluding expert who could explain why a fire was not arson in accordance with defendant's testimony was not harmless).
Therefore, as the trial court did not consider all the factors set forth in KRE 702, we remand for a new Daubert hearing in accordance with KRE 702 for the circuit court to make a determination as to the admissibility of Dr. Beggan's testimony.
Hammond argues the trial court abused its discretion by admitting the photograph of his genitals, where any probative value it had was low and substantially outweighed by the danger of undue prejudice. At trial, Hammond argued the photograph was equivalent to gruesome murder photos which are excluded, the photograph was not admissible because he was not contesting his involvement in the text exchanges, the Commonwealth had other ways to prove its case and it was cumulative of Investigator Hedden's testimony that Hammond sent a photograph of his penis to Jenna. The Commonwealth argued the photograph was relevant because it showed Hammond's attempt to entice Jenna to have sex. The trial court denied Hammond's motion, ruling that while the photograph was prejudicial it was not unduly prejudicial and it had significant probative value.
We review the trial court's admission of this photograph under the abuse of discretion standard. Holbrook v. Commonwealth , 525 S.W.3d 73, 85 (Ky. 2017).
Pursuant to KRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The court's discretion in making such a determination, while "substantial," is "not unlimited." Hall v. Commonwealth , 468 S.W.3d 814, 827 (Ky. 2015) (quoting Brock v. Commonwealth, 947 S.W.2d 24, 29 (Ky. 1997) ).
"As a general rule, photographs of a gruesome or graphic nature are not rendered inadmissible solely because of their gruesomeness."
*101 Ragland v. Commonwealth , 476 S.W.3d 236, 248 (Ky. 2015). "In order to evaluate the admissibility of the photographs, the Court must determine if the probative value of the evidence was substantially outweighed by its prejudicial effect." Holbrook , 525 S.W.3d at 85. "Evidence that 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case' is unfairly prejudicial." Thorpe v. Commonwealth , 295 S.W.3d 458, 462 (Ky. App. 2009) (quoting Robert G. Lawson, The Kentucky Evidence Law Handbook, § 2.10(4)(b) (4th ed. 2003) ).
"The 'probative value' or 'probative worth' of evidence is a measure of how much the evidence tends to make the fact it is introduced to prove more or less probable. The probative force of a particular item of evidence is, therefore, inherently dependent upon the overall probativeness of other available evidence on that point." Hall , 468 S.W.3d at 823-24. "When there is already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth, regardless of how much persuasive force it might otherwise have by itself." Id. at 824. Thus, a photograph must be considered "within the full evidentiary context of the case, giving due regard to other evidence admitted as well as evidentiary alternatives, so as to ascertain each item's 'marginal' or 'incremental' probative worth for purposes of weighing that value against the risk of prejudice posed by the evidence." Id.
Just as gruesome photographs are not automatically excludable, photographs of genitals are not automatically excludable. See Moore v. Commonwealth , No. 2006-SC-000315-MR, 2008 WL 3890039, 8 (Ky. Aug. 21, 2008) (opining that a photograph depicting the condition of a murder victim's body when it was found, was not automatically excludable as "unduly prejudicial or appalling" simply because the victim's genitals were visible in the photograph.).[2]
Prior to trial, Hamond admitted he sent the text messages to Jenna which included the photograph of his genitals.[3] Where a defendant challenges his identity during direct examination, what is depicted in the photograph could provide useful evidence on cross examination of the defendant or on rebuttal to positively identify the defendant as the person who sent the texts. Too, if a defendant acknowledged he sent the texts but denied he was attempting to induce anyone to engage in sexual acts by sending such a photograph, the particular state of the genitals depicted might confirm or belie such an assertion.
We also do not discount that photographs of genitals when sent to persons defendants believe are minors can be probative for proving that defendants unlawfully used electronic means to induce minors to engage in sexual or other prohibited activities. However, such a photograph necessarily has less probative value when text messages were admitted stating sexual acts the defendant would like to engage in with the victim and there was testimony stating that the defendant sent a photograph of his genitals in conjunction with such messages.
*102 Hammond did not dispute that he sent the photograph or the accuracy of Investigator Hedden's testimony about what it depicted or that it was sent with the purpose of enticing Jenna to entice to engage in sexual acts with Hammond. There was more than enough evidence to establish beyond a reasonable doubt that Hammond committed the crime at issue if the jury did not believe his defense that he believed he was engaging in role-playing with an adult.
Considered in this context, while the photograph was relevant, its probative value was fairly low compared with the potential it had for prejudicing the jury.[4] The photograph showed an erect penis, much like any other, and there was no reason why Investigator Hedden could not adequately describe what was depicted in the photograph. Compare with Rucker v. Commonwealth , 521 S.W.3d 562, 573 n.6 (Ky. 2017) (allowing admission of a video and photographs showing severe decomposition in the victim's body as it had a high probative value on the material issue of why the Commonwealth was not able to provide a definitive cause of the victim's death and there was no other evidence which could adequately demonstrate why the medical examiner was unable to assign a cause of death).
Therefore, because of the low probative value the photograph had under the circumstances, the trial court erred in not determining that it was more prejudicial than probative. The visceral reaction jurors could expect to have in being confronted with an explicit photograph of Hammond's erect penis, with Hammond having ostensibly sent it to a fifteen-year-old, could indeed have a deleterious effect on a jury and be unfairly prejudicial as it could arouse the jury's sense of horror, provoke its instinct to punish, or base its decision on something other than the established propositions in the case. Therefore, the decision to admit this photograph was prejudicial and not harmless.
Accordingly, we reverse and remand the judgment of the Jefferson Circuit Court based on the admission of the prejudicial photograph for a new trial. Should the Commonwealth retry the case, the circuit court must hold a new Daubert hearing in accordance with KRE 702 and make a determination as to the admissibility of Dr. Beggan's testimony.
ALL CONCUR.

The version of the photograph the jury saw was an eight-inch by ten-inch color photograph. It showed Hammond's erect penis and scrotum with portions of his genitals, based on the angle at which the photo was taken when combined with the enlargement, depicted perhaps two to three times larger than life-sized.

We consider this unpublished opinion pursuant to Kentucky Rules of Civil Procedure 76.28(4) because there are no published opinions which adequately address this issue.

In Hammond's motion in limine , he stated: "Defendant is not contesting that he was involved with the text exchange at issue in this case. Therefore, identity is not at issue."

Photographs depicting genitals may have a higher probative value in other kinds of cases. A photograph of genitals may be relevant for proving or disproving the identity of the person who sexually assaulted a victim, establishing a crime took place or showing a resulting injury.